**WO**

IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Sherry Lynn Larson, | No. CV-12-01844-PHX-JAT |
| Plaintiff, | **ORDER** |
| v. | |
| Carolyn W. Colvin, Acting Commissioner of the Social Security Administration, | |
| Defendant. | |

Pending before the Court is Plaintiff's appeal from the Administrative Law Judge's denial of Plaintiff's application for disability insurance benefits under Title II of the Social Security Act.

**I.      PROCEDURAL BACKGROUND**

On May 29, 2009, Plaintiff Sherry Lynn Larson filed a Title II application for a period of disability and disability insurance benefits with the Commissioner of the Social Security Administration (the "Commissioner"), alleging that her disability began on October 15, 2006.  (Record Transcript ("TR") 28).  Plaintiff's claim was denied initially on September 17, 2009, and upon reconsideration it was denied again on March 9, 2010.  (*Id*.).

Following the denials, on March 25, 2010, Plaintiff filed a request for a hearing with an Administrative Law Judge ("ALJ").  (*Id*.).  Plaintiff appeared and testified before the ALJ on January 4, 2011.  (*Id*.).  On March 11, 2011, the ALJ issued a decision finding that Plaintiff suffered from severe fibromyalgia and dysthymic disorder and was unable

1   to perform past relevant work.  (TR 30; TR 36).  However, the ALJ found that Plaintiff
2   was not disabled under the Social Security Act because she retained the ability to do
3   other work performing jobs that exist in significant numbers in the national economy.
4   (TR 37-38).

5       Following the ALJ's denial of Plaintiff's claim, on March 28, 2011, Plaintiff
6   requested review of the ALJ's decision with the Appeals Council, Office of Hearings and
7   Appeals, Social Security Administration.  (TR 22).  On July 13, 2012, the Appeals
8   Council denied Plaintiff's request for review stating the Council had "considered the
9   reasons [Plaintiff] disagrees with the decision" and "this information does not provide a
10  basis for changing the [ALJ's] decision."  (TR 1-2).  The Appeals Council adopted the
11  ALJ's decision as the final decision of the Commissioner.  (TR 1).

12      On August 30, 2012, Plaintiff filed her Complaint with this Court for judicial
13  review of the Commissioner's decision denying her claim, which is the subject of this
14  appeal.  (Doc. 1).  On February 19, 2013, Plaintiff filed an opening brief (the "Brief")
15  seeking judicial review of her claim for disability insurance benefits.  (Doc. 16).  In the
16  Brief, Plaintiff argues that the Court should vacate the ALJ's decision and award benefits
17  because the ALJ's decision contains legal error as it lacks substantial justification to
18  support the ALJ's conclusions.  (*Id*. at 27).

19  **II.    LEGAL STANDARD**

20      The Commissioner's decision to deny benefits will be overturned "only if it is not
21  supported by substantial evidence or is based on legal error."  *Magallanes v. Bowen*, 881
22  F.2d 747, 750 (9th Cir. 1989) (quotation omitted).  Substantial evidence is more than a
23  mere scintilla, but less than a preponderance.  *Reddick v. Chater*, 157 F.3d 715, 720 (9th
24  Cir. 1998).

25      "The inquiry here is whether the record, read as a whole, yields such evidence as
26  would allow a reasonable mind to accept the conclusions reached by the ALJ."  *Gallant*
27  *v. Heckler*, 753 F.2d 1450, 1453 (9th Cir. 1984) (citation omitted).  In determining
28  whether there is substantial evidence to support a decision, this Court considers the

1    record as a whole, weighing both the evidence that supports the ALJ's conclusions and

2    the evidence that detracts from the ALJ's conclusions.  *Reddick*, 157 F.3d at 720.

3    "Where evidence is susceptible of more than one rational interpretation, it is the ALJ's

4    conclusion which must be upheld; and in reaching his findings, the ALJ is entitled to

5    draw inferences logically flowing from the evidence."  *Gallant*, 753 F.2d at 1453

6    (citations omitted).   If there is sufficient evidence to support the Commissioner's

7    determination, the Court cannot substitute its own determination. *See Young v. Sullivan*,

8    911 F.2d 180, 184 (9th Cir. 1990).  The ALJ is responsible for resolving conflicts in

9    medical testimony, determining credibility, and resolving ambiguities.  *See Andrews v.*

10   *Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995).  Thus, if on the whole record before this

11   Court, substantial evidence supports the Commissioner's decision, this Court must affirm

12   it.  *See Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989); *see also* 42 U.S.C. §

13   405(g).

14              **A.    Definition of Disability**

15              To qualify for disability benefits under the Social Security Act, a claimant must

16   show, among other things, that she is "under a disability."  42 U.S.C. § 423(a)(1)(E).

17   "The mere existence of an impairment is insufficient proof of a disability."  *Matthews v.*

18   *Shalala*, 10 F.3d 678, 680 (9th Cir. 1993) (citing *Sample v. Schweiker*, 694 F.2d 639,

19   642–43 (9th Cir. 1982)).   Disability has "a severity and durational requirement for

20   recognition under the [Social Security] Act that accords with the remedial purpose of the

21   Act."  *Flaten v. Sec'y of Health & Human Svcs.*, 44 F.3d 1453, 1459 (9th Cir. 1995).

22              The Social Security Act defines "disability" as the "inability to engage in any

23   substantial gainful activity by reason of any medically determinable physical or mental

24   impairment which can be expected to result in death or which has lasted or can be

25   expected to last for a continuous period of not less than 12 months."  42 U.S.C. §

26   423(d)(1)(A).  A person is "under a disability only if h[er] physical or mental impairment

27   or impairments are of such severity that [s]he is not only unable to do h[er] previous work

28   but cannot, considering h[er] age, education, and work experience, engage in any other

1  kind of substantial gainful work which exists in the national economy." *Id*. at §

2  423(d)(2)(A).

3      "A claimant bears the burden of proving that an impairment is disabling."

4  *Matthews*, 10 F.3d at 680 (quoting *Miller v. Heckler*, 770 F.2d 845, 849 (9th Cir. 1985)).

5  Thus, "[t]he applicant must show that [s]he is precluded from engaging in not only h[er]

6  'previous work,' but also from performing 'any other kind of substantial gainful work'

7  due to such impairment." *Id*. (quoting 42 U.S.C. § 423(d)(2)(A)).

8      **B.    Five-Step Evaluation Process**

9      The Social Security regulations set forth a five-step sequential process for

10  evaluating disability claims.  20 C.F.R. § 404.1520; *see also Reddick*, 157 F.3d at 721

11  (describing the sequential process).  A finding of "not disabled" at any step in the

12  sequential process will end the ALJ's inquiry and the claim will be denied.  20 C.F.R. §

13  404.1520(a)(4).  The claimant bears the burden of proof at the first four steps, but the

14  burden shifts to the ALJ at the final step.  *Reddick*, 157 F.3d at 721.

15      The five steps are as follows:

16      First, the ALJ determines whether the claimant is "doing substantial gainful

17  activity." 20 C.F.R. § 404.1520(a)(4)(i).  If so, the claimant is not disabled.

18      Second, if the claimant is not gainfully employed, the ALJ determines whether the

19  claimant has a "severe medically determinable physical or mental impairment."   20

20  C.F.R. § 404.1520(a)(4)(ii).  A severe impairment is one that "significantly limits [the

21  claimant's] physical or mental ability to do basic work activities." *Id*. at § 404.1520(c).

22  Basic work activities means the "abilities and aptitudes to do most jobs."  *Id*. at §

23  404.1521(b).  Further, the impairment must either be expected "to result in death" or "to

24  last for a continuous period of twelve months." *Id*. at § 404.1509 (incorporated by

25  reference in 20 C.F.R. § 404.1520(a)(4)(ii)).  The "step-two inquiry is a de minimis

26  screening device to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290

27  (9th Cir. 1996).

28      Third, having found a severe impairment, the ALJ next determines whether the

impairment "meets or medically equals the criteria of any of the listings in the Listing of Impairments in appendix 1, subpart P of 20 CFR part 404 (appendix 1)." SSR 12-2p, 2012 WL 3104869 at *6 (July 25, 2012). If so, the claimant is found disabled without considering the claimant's age, education, and work experience. 20 C.F.R.§ 404.1520(d).

Fibromyalgia ("FM"), however, cannot meet a listing in appendix 1 because FM is not a listed impairment. At step 3, therefore, the ALJ determines whether FM medically equals a listing (for example, listing 14.09D in the listing for inflammatory arthritis), or whether it medically equals a listing in combination with at least one other medically determinable impairment. SSR 12-2p at *6.

When a claimant's impairments does not meet or equal a listed impairment under appendix 1, the ALJ will assess a claimant's Residual Functional Capacity ("RFC"). *Id*. The ALJ bases the RFC assessment on all relevant evidence in the case record. *Id*. The ALJ considers the effects of all of the claimant's medically determinable impairments, including impairments that are not severe. *Id*. For a person with FM, the ALJ will consider a longitudinal record whenever possible because the symptoms of FM can wax and wane so that a person may have bad days and good days. *Id*.

At steps 4 and 5, the ALJ uses the RFC assessment to determine whether the claimant is capable of doing any past relevant work (step 4) or any other work that exists in significant numbers in the national economy (step 5). *Id*.; 20 C.F.R. § 404.1520(a). If the person is able to do any past relevant work, the ALJ will find that he or she is not disabled. *Id*. If the person is not able to do any past relevant work or does not have such work experience, the ALJ determines whether he or she can do any other work. *Id*. The usual vocational considerations apply (age, education, and work experience). *Id*.; 20 C.F.R. § 404.1520(g)(1). If the claimant can make an adjustment to other work, then she is not disabled. If the claimant cannot perform other work, she will be found disabled. As previously noted, the ALJ has the burden of proving the claimant can perform other substantial gainful work that exists in the national economy. *Reddick*, 157 F.3d at 721.

With regard to steps 1-5 in this case, the ALJ found that Plaintiff: (1) had satisfied

the first step and had not engaged in substantial gainful activity since October 15, 2006 (TR 30); (2) had fulfilled the second step and shown that she had the following severe impairments: FM and dysthymic disorder (*id.*); (3) with regard to the third step, the ALJ found that Plaintiff did not have an impairment or combination of impairments specifically listed in the regulations (TR 30-32), and therefore the ALJ determined that Plaintiff had the RFC to perform less than the full range of light work as defined by the regulations (TR 32); (4)  as a result of this analysis, the ALJ found at the fourth step that Plaintiff is "unable to perform any past relevant work" as a corporate recruiter, office manager, human resources associate, traffic manager, inventory control manager, receptionist, or as an optician (TR 36).  At the last step (5), however, the ALJ found that given Plaintiff's age, education, work experience, and RFC that Plaintiff is capable of making a successful adjustment to other work and performing jobs that exist in significant numbers in the national economy.  (TR 37-38).  Thus, the ALJ found that Plaintiff was not disabled as defined in the Social Security Act.  (TR 38).

## III.    ANALYSIS

Plaintiff makes three arguments for how the ALJ committed legal error and for why the Court should exercise its discretion and remand Plaintiff's claim for a determination of disability benefits.  Specifically, Plaintiff argues that (1) the ALJ erred by rejecting the assessment of Plaintiff's treating physician (Doc. 16 at 15-20), (2) that the ALJ failed to properly weigh Plaintiff's subjective complaints (*id*. at 20-25), and (3) that the ALJ failed to properly weigh third party testimony (*id*. at 25-27).  The Court addresses each of Plaintiff's arguments in turn.

### A.    Whether the ALJ Properly Weighed the Medical Assessment of Plaintiff's Treating Physician

First, Plaintiff argues that the ALJ failed to properly weigh the medical source opinion evidence.  Plaintiff had medical assessments performed by her treating physician and state agency physicians on both her physical and mental conditions.  Based on these assessments and the record as a whole, the ALJ concluded that Plaintiff was only limited

1    to a range of sedentary to light work and not disabled as defined under the Social Security

2    Act. (TR 35).

3        Plaintiff contends that the ALJ improperly rejected the medical assessment of her

4    physical condition done by her treating rheumatologist, Joseph W. Nolan, M.D. ("Dr.

5    Nolan"). Plaintiff argues that the ALJ gave too much weight to the medical assessments

6    of state agency physicians Michael Peril, M.D. ("Dr. Peril") and William Backlund, M.D.

7    ("Dr. Backlund"). (*Id*. at 15-20).

8        The Court must determine whether there is substantial evidence supporting the

9    ALJ's decision to give more credence to the assessments done by the state agency

10    physicians. The ALJ is responsible for resolving conflicts in the medical record. *Benton*

11    *v. Barnhart*, 331 F.3d 1030, 1040 (9th Cir. 2003) (citing *Thomas v. Barnhart*, 278 F.3d

12    947, 956-57 (9th Cir. 2002)).

> Those physicians with the most significant clinical relationship with the claimant are generally entitled to more weight than those physicians with lesser relationships. *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995); 20 C.F.R. §§ 404.1527(d), 416.927(d). As such, the ALJ may only reject a treating or examining physician's uncontradicted medical opinion based on "clear and convincing reasons." *Lester*, 81 F.3d at 830–31. Where such an opinion is contradicted, however, it may be rejected for "specific and legitimate reasons that are supported by substantial evidence in the record." *Id*.

21    *Carmickle v. Comm'r, Soc. Sec. Admin*., 533 F.3d 1155, 1164 (9th Cir. 2008). As stated

22    above, *see supra* Section II, substantial evidence is more than a mere scintilla, but less

23    than a preponderance. *Reddick*, 157 F.3d at 720. Accordingly, because Dr. Nolan's

24    assessment was contradicted, the Court looks to whether the ALJ articulated specific and

25    legitimate reasons for disregarding Dr. Nolan's assessment, supported by such relevant

26    evidence as a reasonable mind might accept as adequate to support a conclusion. *See id*.

27        Dr. Nolan found Plaintiff's pain symptoms are moderately-severe and her level of

28    fatigue was also severe. Dr. Nolan opined that Plaintiff's pain seriously affects her

1    ability to function to the point where she is extremely impaired due to pain.  Dr. Nolan

2    also found that Plaintiff's symptoms would frequently interfere with her abilities to

3    sustain concentration, attention, and persistence and would render her unable to sustain

4    work on a regular and continuing basis.  (TR 35).

5           The ALJ explained three specific and legitimate reasons why he "assign[ed] very

6    low weight to the opinions of Dr. Nolan."  (TR 35).  First, "[t]he limitations asserted by

7    the doctor [were] inconsistent with [Plaintiff's] treating records."  (*Id*.).   Second,

8    Plaintiff's limitations were not justified by the clinical evidence, including Dr. Nolan's

9    own progress notes indicating Plaintiff's FM is "stable."  (*Id*.).   Finally, Dr. Nolan's

10   "own reports fail[ed] to reveal the type of significant clinical and laboratory

11   abnormalities one would expect if [Plaintiff] were in fact disabled, and [Dr. Nolan] did

12   not specifically address this weakness."  (*Id*.).

13          Contrary to Dr. Nolan, the state agency physicians found based on the objective

14   findings in the treating notes and the consultative examiners that Plaintiff "would have

15   the capacity to perform a range of light exertional work."  (TR 36).  The ALJ recognized

16   that these physicians were "non-examining" and that their opinions "do not as a general

17   matter deserve as much weight as those of examining or treating physicians."  (*Id*.).

18   However, the ALJ explained that greater weight was given to the opinions of the state

19   agency physicians because they were more consistent with the entire case record.  *See*

20   (TR 32, 36).

21          The ALJ considered Plaintiff's symptoms, the medical opinion evidence, the

22   treating records, and the objective medical evidence in arriving at his conclusion.  The

23   objective evidence explicitly cited by the ALJ included the consultative examination

24   performed by Ruben Aguilera, M.D., and the physical assessments performed by Doctors

25   Peril and Backlund.  (TR 34-36).  Further, the objective evidence in the "record as a

26   whole," aside from these assessments, showed Plaintiff was diagnosed with FM in 2006,

27   yet there are no records of any hospitalizations or emergency room visits for the

28   condition.  (TR 34).  Plaintiff also failed to follow-up with her doctor as recommended.

(*Id.*).  Dr. Nolan's treatment record for Plaintiff is infrequent and rare.  (*Id.*).  The ALJ cited progress notes from Dr. Nolan that revealed Plaintiff's FM is active, but stable. (*Id.*).  The ALJ also noted that Plaintiff's physical examinations showed that while she exhibited tender points of FM, there are no reports of any neurological deficits or synovitis and that Plaintiff reported that she felt her FM was about the same with no worsening or significant changes.  (*Id.*).  Social Security Ruling, SSR 12-2P, 2012 WL 3104869 (July 25, 2012), states,

> [a]s with any claim for disability benefits, before we find that a person with an MDI of FM is disabled, we must ensure there is sufficient objective evidence to support a finding that the person's impairment(s) so limits the person's functional abilities that it precludes him or her from performing any substantial gainful activity.

SSR 12-2p at *2.

> If objective medical evidence does not substantiate the person's statements about the intensity, persistence, and functionally limiting effects of symptoms, [the Commissioner] consider[s] all of the evidence in the case record, including the person's daily activities, medications or other treatments the person uses, or has used, to alleviate symptoms; the nature and frequency of the person's attempts to obtain medical treatment for symptoms; and statements by other people about the person's symptoms.

*Id*. at *5.  This is exactly the type of objective evidence that the ALJ relied on in making the determination that Plaintiff was not disabled.

In addition to the objective evidence throughout the record that was consistent with the state agency physician's assessments, the fact that Dr. Nolan's opinion was inconsistent with his treating records and not justified by the clinical evidence also influenced the ALJ's decision.  (TR 35).

The Court finds the evidence cited by the ALJ was at the very least susceptible to more than one rational interpretation.  Accordingly, the ALJ's conclusion must be upheld.  *See Gallant*, 753 F.2d at 1453 (citations omitted).

**B.     Whether the ALJ Properly Weighed Plaintiff's Symptom Testimony**

Next, Plaintiff argues that the ALJ failed to properly weigh her subjective complaints.  (Doc. 16 at 20-25).  Plaintiff argues that the ALJ must give clear and convincing reasons for rejecting her testimony and that the ALJ merely rejected her testimony in this case because the ALJ claimed it was not consistent with Plaintiff's RFC assessment.  (*Id*. at 20-21).  However, to reject the subjective testimony of a claimant, the ALJ must make specific findings based on the record.  The District Court of California has addressed this issue in a well-reasoned opinion and this Court has adopted that Court's reasoning before in concluding that, to the extent there is actually any principled distinction between the two standards, the ALJ must make specific findings supported by the record to explain his credibility evaluation.[1]

---

[1] The District Court of California set forth its reasoning as follows:

> In *Bunnell*, the court addressed confusion regarding the standard for evaluating the credibility of subjective complaints and endorsed the standard set forth in *Cotton v. Bowen*, 799 F.2d 1403 (9th Cir.1986), *Varney v. Secretary of Health and Human Services*, 846 F.2d 581, 583–584 (9th Cir.1988) and *Gamer v. Secretary of Health and Human Services*, 815 F.2d 1275, 1279 (9th Cir.1987).  *Bunnell*, 949 F.2d at 345.  The so-called "*Cotton* standard" requires the claimant to produce objective medical evidence of an underlying impairment that is reasonably likely to be the cause of the alleged pain.  Once that evidence is produced, the adjudicator may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence fully corroborating the alleged severity of the pain.  *Bunnell*, 949 F.2d at 343, 345 (citing *Cotton*, 799 F.2d at 1407).  Rather, the adjudicator must "specifically make findings which support this conclusion.  These findings, properly supported by the record, must be sufficiently specific to allow a reviewing court to conclude the adjudicator rejected the testimony on permissible grounds and did not arbitrarily discredit a claimant's testimony regarding pain."  *Bunnell*, 949 F.2d at 345–46 (internal citation and quotation omitted).

> Some subsequent decisions have stated that, unless there

is affirmative evidence that a claimant is malingering, the ALJ must articulate "clear and convincing" reasons for rejecting subjective complaints. *See, e.g., Morgan v. Commissioner of the Social Security Administration*, 169 F.3d 595, 599 (9th Cir.1999); *Regennitter v. Commissioner of the Social Security Administration*, 166 F.3d 1294, 1296 (9th Cir.1999); *Reddick*, 157 F.3d at 722; *Light*, 119 F.3d at 792; *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir.1995); *Smolen*, 80 F.3d at 1284; *Johnson v. Shalala*, 60 F.3d 1428, 1433 (9th Cir.1995); *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir.1993). Other decisions state that the ALJ must make specific findings based on the record, but do not use the "clear and convincing" formula. *See, e.g., Meanel v. Apfel*, 172 F.3d 1111, 1113–14 (9th Cir.1999); *Sousa v. Callahan*, 143 F.3d 1240, 1244 (9th Cir.1998); *Chavez v. Department of Health and Human Services*, 103 F.3d 849, 853 (9th Cir.1996); *Byrnes v. Shalala*, 60 F.3d 639, 641–42 (9th Cir.1995); *Moncada*, 60 F.3d at 524; *Orteza v. Shalala*, 50 F.3d 748, 749–50 (9th Cir.1995) (per curiam); *Flaten v. Secretary of Health and Human Services*, 44 F.3d 1453, 1464 (9th Cir.1995).

The "clear and convincing" language appears to have been derived from *Swenson v. Sullivan*, 876 F.2d 683 (9th Cir.1989), which states that "[t]he Secretary's reasons for rejecting excess symptom testimony must be clear and convincing if medical evidence establishes an objective basis for some degree of the symptom and no evidence affirmatively suggests that the claimant was malingering." *Swenson*, 876 F.2d at 687 (citing *Gallant v. Heckler*, 753 F.2d 1450, 1455 (9th Cir.1984)). In *Gallant*, however, the court did not hold, or even affirmatively state, that an ALJ is required to provide "clear and convincing" reasons for rejecting excess pain testimony whenever there is no evidence of malingering. Instead, the court merely observed that no witness had testified that the claimant was malingering, that "[n]o clear and convincing reasons were provided by the ALJ" for his rejection of the claimant's testimony, and that the evidence relied on by the ALJ for his credibility evaluation was "insubstantial." *Gallant*, 753 F .2d at 1455, 1456.

*Bunnell* did not cite either *Gallant* or *Swenson*, and neither

Turning to the ALJ's decision in this case, the Court finds the ALJ did in fact make specific findings supported by the record in explaining why he disregarded Plaintiff's subjective complaints.  First, the ALJ found Plaintiff's subjective complaints were not supported by the medical evidence.  (TR 34).  While an ALJ may not reject a claimant's subjective complaints based solely on lack of objective medical evidence to fully corroborate the alleged severity of pain, *see Rollins*, 261 F.3d at 856-57; *Fair*, 885 F.2d at 602, the lack of objective medical evidence supporting the claimant's claims may support the ALJ's finding that the claimant is not credible.  *See Batson v. Comm'r of the Soc. Sec. Admin.*, 359 F.3d 1190, 1197 (9th Cir. 2003).  While Plaintiff was diagnosed with FM in 2006, there are no records of hospitalization or emergency room visits due to the condition.  (TR 34).  Progress notes from her treating physician show Plaintiff's FM is active, but stable.  (*Id.*).  While her physical examinations show she does exhibit tender points of FM, there are no reports of any neurological deficits or synovitis.  (*Id.*).  Further, Plaintiff also reported that she feels her FM is about the same, with no worsening or significant changes.  (*Id.*).

---

> *Bunnell* nor the cases it did cite with approval (that is, *Cotton*, *Varney*, and *Gamer*) use the "clear and convincing" formula. It thus appears that the "clear and convincing" standard is an unwarranted elaboration of the substantial evidence standard of review, and that it was not part of the *Cotton* test adopted in *Bunnell*, where the en banc court attempted to clarify the law.  Any difference between the standards may be more apparent than real.  There does not appear to be any principled distinction between the two standards as they have been applied.  To the extent that there is or may be a conflict, however, *Bunnell* must control since it was an en banc decision.  Accordingly, this Court will adhere to *Bunnell's* requirement that the ALJ make "specific findings" supported by the record to explain his credibility evaluation, rather than imposing the arguably more exacting "clear and convincing" requirement suggested by *Morgan* and its predecessors.

*Ballard v. Apfel*, No. CV 99-2195-AJW, 2000 WL 1899797, at *2 (C.D. Cal. Dec. 19, 2000).

Second, the ALJ also found Plaintiff was noncompliant with treatment recommendations. (TR 34). "[U]nexplained, or inadequately explained, failure to seek treatment or follow a prescribed course of treatment" is a relevant factor in assessing credibility of pain testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 346 (9th Cir.1991); *see also Meanal v. Apfel*, 172 F.3d 1111, 1114 (9th Cir. 1999) (ALJ may consider Social Security disability claimant's failure to follow treatment advice as a factor in assessing Social Security disability claimant's credibility). After being diagnosed with FM, Dr. Nolan recommended that Plaintiff follow-up with him in six months. (TR 34). Plaintiff waited a year for one follow-up and fifteen months for another follow-up evaluation. (*Id*.).

Third, the ALJ found Plaintiff's daily activities undermined her subjective complaints (TR 33). *See Matthews*, 10 F.3d at 679-80 (Ninth Circuit Court of Appeals upheld ALJ's rejection of claimant's subjective complaints where ALJ found claimant's performance of daily activities like housecleaning, light gardening, and shopping undermined claimant's assertion of disabling pain.). The ALJ noted that Plaintiff "is independent in self-care and hygiene, prepares simple meals, drives, does light household chores, such as laundry, washes dishes, surfs the internet, uses the computer for e-mail to chat with family, goes to the grocery shopping, and reads. Her hobbies also include playing video games and watching television." (TR 33). The ALJ explained that Plaintiff's subjective allegations of disabling pain were undermined by her ability to spend a substantial part of the day engaged in activities involving the performance of various physical and mental functions. (*Id*.).

Fourth, the record also contained evidence of exaggeration. In weighing credibility, the ALJ may consider evidence that a claimant exaggerated her symptoms when evaluating the claimant's subjective complaints of pain. *See Hall v. Astrue*, No. CV 12-3494 JC, 2012 WL 3779080, at *4 (C.D. Cal. Aug. 31, 2012); *Jones v. Callahan*, 122 F.2d 1148, 1152 (8th Cir. 1997). As the ALJ expressly noted in his decision, Plaintiff's "activities suggest that the she has better physical and mental capacities than

1  she has stated in testimony and written statements, as her impairments do not appear to

2  significantly limit her daily functional abilities."  (TR 33).

3        Fifth, as the ALJ noted `(*id*.), medications were effective.  "Impairments that can

4  be controlled effectively with medication are not disabling for the purpose of determining

5  eligibility for [disability] benefits."  *Warre v. Comm'r of Soc. Sec. Admin*., 439 F.3d

6  1001, 1006 (9th Cir. 2006) (citing *Brown v. Barnhart*, 390 F.3d 535, 540 (8th Cir. 2004));

7  *Lovelace v. Bowen*, 813 F.2d 55, 59 (5th Cir. 1987); *Odle v. Heckler*, 707 F.2d 439, 440

8  (9th Cir. 1983) (affirming a denial of benefits and noting that the claimant's impairments

9  were responsive to medication)).

10        The Court finds the ALJ's credibility finding was a "reasonable interpretation" of

11  the evidence and was supported by substantial evidence in the record, accordingly, "it is

12  not [the Court's] role to second-guess it."  *Rollins*, 261 F.3d at 857 (citing *Fair*, 885 F.2d

13  at 604).  Therefore, the ALJ did not err in rejecting Plaintiff's subjective complaints.

14      **C.**      **Whether the ALJ Properly Weighed Third Party Testimony**

15        Finally, Plaintiff argues that he ALJ failed to properly weigh the testimony of

16  Plaintiff's spouse.  (Doc. 16 at 25-27).  When an ALJ discounts the testimony of lay

17  witnesses, "he or she must give reasons that are germane to each witness."  *Valentine v.*

18  *Comm'r Soc. Sec. Admin*., 574 F.3d 685, 694 (9th Cir. 2009) (quoting *Dodrill v. Shalala*,

19  12 F.3d 915, 919 (9th Cir. 1993)).

20        The ALJ explained that Plaintiff's spouse's testimony (TR 153-160) was primarily

21  rejected because it was similar to Plaintiff's subjective complaints.    (TR 36).  The

22  limitations Plaintiff's spouse reported were not credible for the same reasons that

23  Plaintiff's testimony was not credible—the testimony was inconsistent with the

24  "preponderance of the opinions and observations by medical doctors in this case."  (*Id*.).

25        In *Valentine*, the Ninth Circuit Court of Appeals found that the ALJ gave germane

26  reasons for discounting the testimony of a claimant's spouse by rejecting the spouse's lay

27  testimony for the same reasons the ALJ rejected the claimant's own subjective

28  complaints.  The Court of Appeals explicitly made this finding because the spouse's

testimony was similar to the testimony given by the claimant.  574 F.3d at 693-94.  The Court of Appeals explained that because the ALJ provided valid reasons for rejecting claimant's own subjective complaints, and "[the spouse's] testimony was similar to such complaints, it follows that the ALJ also gave germane reasons for rejecting the spouse's testimony" by rejecting that testimony for the same reasons.  *Id*. at 694.

In this case, as discussed above, *see supra* Section II.B, the ALJ gave valid reasons for rejecting Plaintiff's own subjective complaints and the ALJ referenced those reasons as the basis for also rejecting Plaintiff's spouse's testimony.  *See* (TR 36). Therefore, the ALJ gave germane reasons for rejecting the lay statements of Plaintiff's spouse and did not err in how he rejected that testimony.

## IV.    CONCLUSION

Accordingly, the ALJ did not err in finding that Plaintiff was not disabled within the meaning the Social Security Act.

Based on the foregoing,

**IT IS ORDERED** that the decision of the Administrative Law Judge is **AFFIRMED**.

**IT IS FURTHER ORDERED** that the Clerk of the Court shall enter judgment accordingly.  The judgment will serve as the mandate of this Court.

Dated this 24th day of June, 2013.

James A. Teilborg
Senior United States District Judge